UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CRIMINAL ACTION NO. 3:10-cr-107-H

UNITED STATES OF AMERICA                                      PLAINTIFF

v.

SHANION M. THURMAN
JAMES L. ROBINSON                                            DEFENDANTS

### MEMORANDUM OPINION AND ORDER

At the close of evidence, the Court granted Defendant Thurman's motion for a directed verdict of acquittal. The following Memorandum Opinion expands somewhat on the reasons already in the record.

To determine whether to grant a directed verdict motion in a criminal trial, a district court asks whether a reasonable jury would have a legally sufficient evidentiary basis to find the defendant guilty of the crime charged. Federal Rule of Criminal Procedure 29(a) instructs that "…after the close of all evidence, the court on the defendant's motion must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain that conviction."

The one-count indictment charged Thurman with violating 18 U.S.C. § 1512(a)(2)(A) and 2. In pertinent part, the Grand Jury charged Thurman with having "aided and abetted [co-Defendant James Robinson] and others known and unknown…and knowingly use[]…the threat of physical force against G.S. with the intent to influence, delay and prevent the testimony of G.S. in an official proceeding." In short, Thurman was alleged to have aided and abetted witness tampering, a specific form of obstruction of justice.

To prove its case against Thurman, the United States assumed to establish beyond a reasonable doubt that Thurman (1) knowingly acted in some way for the purpose of aiding the commission of that crime and (2) acted with the intention of causing the crime charged to be committed. Sixth Circuit Pattern Jury Instructions. According to the United States' pretrial averments and proof at trial, the predicate acts constituting Thurman's and co-defendant Robinson's charge was aiding and abetting Ricky Kelly in writing an allegedly threatening letter that was delivered to G.S., a witness against Kelly in a federal homicide trial, while G.S. was in prison in late May 2010. Hence, the words "that crime" in the instructions refer only to the delivery of what the United States alleged was a threat letter to G.S. in prison.

At trial, the United States established that Thurman, due to her employment at the Oldham County Department of Public Advocacy office, had access to a plea agreement entered by inmate G.S. indicating G.S.'s intention to testify against Kelly and link him to three murders. Further, the evidence established that Thurman delivered a copy of this plea agreement to James Robinson, her live-in boyfriend. However, the United States offered no proof that Thurman personally knew or was a friend or associate of Ricky Kelly nor that Thurman personally knew or was an enemy of G.S.[1] No evidence in the record establishes Thurman knew or asked what Robinson would do with the information contained in G.S.'s plea agreement, much less that she knew or could have known what Kelly would have done once Robinson transferred the information to him.

---

[1] The evidence does establish that Thurman had heard of Kelly through her then boyfriend, Robinson. Defendant Robinson testified that Thurman knew of only one of his phone calls with Kelly. This phone call occurred in late 2009 or early 2010, when Robinson took a call from Kelly while Thurman was in the car. Robinson told Thurman the caller was Ricky Kelly, a friend. According to defense counsel, the reason Thurman brought home the plea agreement in the first place was that she recognized Kelly's name from that car ride and upon noticing it in G.S.'s plea agreement, wanted to ask Robinson "Is this your friend?"

While tape-recorded prison calls established that Robinson had many conversations with Ricky Kelly between January and May, 2010 (Kelly, like G.S., was an inmate at all times relevant to the indictment), no positive evidence established that Thurman knew about the fact or content of these particular conversations with Ricky Kelly or that Thurman herself ever spoke with or visited Ricky Kelly. The United States offered no evidence that either Thurman or Robinson knew about or somehow encouraged Ricky Kelly's threat of physical force against G.S. in a coded letter and or that either helped deliver it to G.S. in jail.

The instructions require that Thurman had the specific intent to commit the crime charged—i.e., tampering with G.S., a federal witness, via threat letter written by Ricky Kelly and delivered to G.S. while G.S. was in jail. While the United States emphasized that it was Thurman's leak of the plea agreement that "got the ball rolling," it provided no proof that Thurman had the specific intent to threaten physical force against G.S. The intent necessary to support a conviction for aiding and abetting is specific intent. The required intent "goes beyond the mere knowledge that the defendant's action would tend to advance some nefarious purpose of the principal [Ricky Kelly]. Rather, the defendant must act with the specific intent of facilitating or advancing the principal's commission of the underlying crime." *U.S. v. Frampton*. 382 F.3d 213, 223 (2d Cir. 2004).

The Court concluded that it was quite a leap too far for one to infer that Thurman could have had any idea that Kelly would organize a plan to threaten physical force against G.S. Consequently, the evidence is devoid of an inference that Thurman had the specific intent required by the crime charged and the Court directed a verdict of acquittal in her favor.

cc:     Counsel of Record